**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**GERALD STOVES #446754**                                    **CIVIL ACTION**

**versus**                                                              **NO. 04-2037**

**WARDEN JAMES M. LEBLANC**                         **SECTION: "R" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting

a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of

fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as

applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District

Courts. Upon review of the record, the Court has determined that this matter can be disposed of

without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following

reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

## I. Procedural History

Petitioner, Gerald Stoves, is a state prisoner incarcerated at the Dixon Correctional Institute,

Jackson, Louisiana. On July 19, 2001, he was convicted of armed robbery in violation of

La.Rev.Stat.Ann. § 14:64.[1] On August 30, 2001, he was sentenced to a term of twenty-five years

---

[1] State Rec., Vol. II of II, transcript of July 18-19, 2001, pp. 255-56.

imprisonment without benefit of parole, probation, or suspension of sentence.[2]  His conviction and

sentence were affirmed by the Louisiana First Circuit Court of Appeal on February 14, 2003.[3]  He

then filed with the Louisiana Supreme Court a related writ application which was denied on October

31, 2003.[4]

On July 15, 2004, petitioner filed his original application for federal *habeas corpus* relief.[5]

In support of that application, he claimed:

1.     The trial court erred in denying petitioner's challenge for cause of a juror

       whose son was an assistant district attorney; and

2.     The trial court erred in admitting an inculpatory statement absent advance

       notice.

On September 1, 2004, the state filed an answer in opposition to the petition.[6]  The state

conceded that petitioner's claims were exhausted and did not challenge the timeliness of the petition;

however, the state argued that the claims should be rejected on the merits.

On October 4, 2004, petitioner filed a motion to stay these proceedings, in which he stated:

Petitioner is currently in the process of filing an application for post conviction relief
in state court, which would toll the one year limitation enunciated in § 2244.  Once

---

[2] State Rec., Vol. I of II, transcript of August 30, 2001, p. 12.

[3]  State v. Stoves, No. 2002-KA-1285 (La. App. 1st Cir. Feb. 14, 2003) (unpublished); State Rec.,
Vol. II of II.

[4]  State v. Stoves, 857 So.2d 475 (La. 2003) (No. 2003-KO-0880); State Rec., Vol. II of II.

[5] Rec. Doc. 1.

[6] Rec. Doc. 4.

exhausted, Petitioner plans to consolidate his direct appeal claims with his post conviction claims in a petition for writ of habeas corpus before this court. Petitioner is aware of the stringent standards for filing a successive petition and believes he cannot meet these requirements. This is the reason he wishes to have the proceedings stayed, to avoid the successive petition doctrine and have all of his claims reviewed in one petition.[7]

The state opposed that motion.[8]

On August 22, 2005, the undersigned issued a report recommending that the motion to stay be granted.[9] On January 24, 2006, the United States District Judge adopted that Report and Recommendation, granting the motion to stay and ordering that petitioner be allowed to file a motion to reopen these proceedings, along with an amended *habeas corpus* petition incorporating his additional newly exhausted claims, within thirty days after exhausting his state court post-conviction remedies.[10]

After the conclusion of the state post-conviction proceedings, petitioner filed a motion to reopen and for leave to file an amended *habeas corpus* petition on or about May 10, 2009.[11] In the proposed amended petition, he reasserted the two claims in his original petition and added ineffective assistance of counsel claims which he had exhausted in the post-conviction proceedings.

On September 22, 2009, the United States District Judge issued an order denying the motion

---

[7] Rec. Doc. 5, p. 2.

[8] Rec. Doc. 8.

[9] Rec. Doc. 10.

[10] Rec. Doc. 11.

[11] Rec. Docs. 12 and 13.

to reopen.[12]  In that order, the District Judge found that reopening would be improper because the amended petition was a mixed petition presenting both exhausted and unexhausted claims.  The District Judge determined that only the ineffective assistance of counsel claims were exhausted and ruled that reopening would be permitted only if petitioner chose to proceed on the exhausted claims alone.

On or about October 1, 2009, petitioner filed another motion to reopen and for leave to file an amended petition.[13]  Based on the District Judge's ruling, petitioner agreed to drop the two claims from his original petition.  However, in the proposed amended petition submitted with the motion, he asserted not only his ineffective assistance of counsel claims but also added another claim challenging the sufficiency of the evidence to support his conviction.[14]  On November 20, 2009, the District Judge granted that motion.[15]  However, in granting the motion, the District Judge indicated that the amended petition contained only the exhausted ineffective assistance claims, apparently failing to note the sufficiency claim.

The matter has now been referred to the undersigned United States Magistrate Judge for the

---

[12]  Rec. Doc. 15.

[13]  Rec. Doc. 16.

[14]  Petitioner nevertheless continued to contend that the two claims from his original petition were in fact exhausted.  He attached to his motion a letter asking for an explanation of the Court's September 22 Order in light of the fact that those two original claims had been exhausted on direct review prior to the initiation of the post-conviction proceedings.  Rec. Doc. 16-2, pp. 48-49.

[15]  Rec. Doc. 18.

issuance of a Report and Recommendation.[16]

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively

overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections

2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and

mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits,

pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and

questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir.

2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the

state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

---

[16]  Rec. Doc. 18.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

### III. Facts

On direct appeal, the Louisiana First Circuit Court of Appeal concisely summarized the facts of this case as follows:

> On July 28, 1999, the victim, Victoria Calloway, was working as manager of Sunrise Fried Chicken in Houma, Louisiana. Tijuana Simmons and Regine R. Conrad were working with Calloway. At approximately 10:00 p.m., Simmons opened the store's back door under the pretext of taking out trash. She was followed back into the store by three armed, masked men. The men robbed Calloway at gunpoint of approximately $2,500 and fled.
> Simmons subsequently pled guilty to accessory after the fact to armed robbery. Two hours after the robbery, and at trial, she identified the robbers as Henry "Joe Demp" Smith, Ranielle Legarde, and G.D. Legarde. She identified the defendant in court as the person she knew as G.D. Legarde.[17]

### IV. Claims from Petitioner's Amended *Habeas Corpus* Petition

#### A. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Id. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that

---

[17] State v. Stoves, No. 2002-KA-1285, at p. 2 (La. App. 1st Cir. Feb. 14, 2003) (unpublished); State Rec., Vol. II of II.

counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

A petitioner bears the burden of proof on an ineffective assistance claim and must establish his claim by a preponderance of the evidence. Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If the Court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without

addressing the other prong.  <u>Strickland</u>, 466 U.S. at 697.

In the instant case, the state district court denied relief, finding that petitioner's ineffective assistance of counsel claims had no merit.[18]  Without additional reasons assigned, relief was likewise denied by the Louisiana First Circuit Court of Appeal[19] and the Louisiana Supreme Court.[20]  Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  For the following reasons, the Court finds that neither of those conditions is met in the instant case and that, therefore, this federal court should defer to the state court's ruling.

At trial, Tijuana Simmons testified that petitioner was wearing a wig during the robbery.[21]  Petitioner claims that his counsel was ineffective for failing to request DNA testing of the wig to determine whether it had in fact been worn by petitioner.  That claim fails for at least two reasons.

First, petitioner has not met his burden to show "what results the scientific tests would have yielded" and that those results would in fact have been favorable to him.  Without those showings, he cannot prove that he was prejudiced by counsel's failure to have such tests performed.  <u>See</u> <u>Evans</u>

_____

[18]  Supplemental State Rec., Vol. I of I, transcript of February 13, 2008; Rec. Doc. 16-2, p. 24 (Minute Entry dated February 13, 2008).

[19]  Rec. Doc. 16-2, p. 25 (<u>State v. Stoves</u>, No. 2008 KW 0484 (La. App. 1st Cir. June 9, 2008)).

[20]  Rec. Doc. 16-2, p. 26 (<u>State <i>ex rel.</i> Stoves v. State</u>, 6 So.3d 784 (La. 2009) (No. 2008-KH-1589)).

[21]  State Rec., Vol. II of II, transcript of July 18-19, 2001, pp. 36 and 45-46.

v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002); Johnson v. Cain, Civ. Action No. 08-4208, 2009 WL 2366385, at *9 (E.D. La. July 29, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *8 (E.D. La. Dec. 11, 2008).

Second, in analyzing an ineffective assistance of counsel claim, "[t]actical and strategical decisions of counsel if based on informed and reasoned practical judgment will not be second-guessed." Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997); see also Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999). At the post-conviction evidentiary hearing in the instant case, defense explained his tactical reason for not pursuing such testing:

> Q.     Mr. Brown, could you tell the Court why you did not request a D.N.A. analysis of the alleged – of a wig, and a hat, at the scene?
>
> A.     I don't particularly remember the facts surrounding the wig, but I do recall the case in great detail. And I do recall that everything in the trial was going very smoothly. And everything was moving in favor of an acquittal. And there was no physical evidence at all, linking my client to the commission of the crime. Therefore, I didn't – I don't think it would have been wise to have done any type of D.N.A. testing, that could have possibly linked him to the particular crime.
>
> Q.     Well, did he inform you that he was not wearing a wig, at the time?
>
> A.     Like I said, this has been a while back and I don't recall. I really don't recall anything about the wig, in particular, but I do know that everything in connection with the case was moving in our favor, up until the last witness was called. The feedback we were getting from everybody in Court, Court personnel and everything, all thought that we were moving in favor of an acquittal; and that – I thought that it would have been – if there would have been any physical evidence, it possibly could have linked the defendant to the crime, I would not have wanted to take the chance of taking – to have him take a test then having him linked to any physical evidence.[22]

---

[22]  Supplemental State Rec., Vol. I of I, transcript of February 13, 2008, pp. 7-8.

Clearly, DNA testing of the wig might not have yielded any evidence disproving petitioner's involvement. Even worse, such testing might have confirmed his involvement beyond a reasonable doubt. In light of those considerations, counsel's tactical decision not to run the risk of compounding the damning evidence against his client by securing such tests was hardly unreasonable. See Thompson v. Cain, 161 F.3d 802, 813-14 (5th Cir. 1998); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *8 (E.D. La. Dec. 11, 2008); Sartain v. Cooper, Civ. Action No. 07-5903, 2008 WL 4758609, at *9 (E.D. La. Oct. 29, 2008). Accordingly, this claim has no merit.

Petitioner next claims that his counsel was ineffective for failing to impeach Tijuana Simmons with her prior inconsistent testimony. At the post-conviction evidentiary hearing, defense counsel explained that he had in fact repeatedly impeached Simmons during cross-examination, stating:

> From my recollection, I impeached her to a great extent – in fact, it went on, and on, and on – the impeachment – we caught her in lies numerous times and if there was anything I didn't question her on, I think it would have been repetitive, because she was the main reason why we thought we were going to gain an acquittal because she – she came across as a terrible witness. And she was the one witness against him. And that's why we thought, you know, that everything was moving in a – you know, moving in our direction, because she was such a bad witness. So, if there were any points that I missed, it was kind of in the nature of beating a dead horse. You know, she was caught lying over and over and over again, on the stand.[23]

Counsel's assertions are amply supported by the trial transcript.[24]

It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously

---

[23] Supplemental State Rec., Vol. I of I, transcript of February 13, 2008, p. 11.

[24] State Rec., Vol. II of II, transcript of July 18-19, 2001, pp. 58-66, 70-71, and 73-74.

to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); see also Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, No. 09-30470, 2009 WL 5183954 (5th Cir. Dec. 29, 2009); Packnett v. Cain, Civ. Action No. 06-5973, 2008 WL 148486, at *11 (E.D. La. Jan. 10, 2008); Parker v. Cain, 445 F.Supp.2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. Moreover, it is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

In the instant case, defense counsel in fact vigorously cross-examined and impeached Simmons in several instances. This Court cannot say that counsel's performance in this respect was so deficient as to violate petitioner's constitutional rights, and petitioner certainly has not shown that he was prejudiced by the fact that some questions went unasked. Accordingly, this claim fails. See, e.g., Sholes v. Cain, Civ. Action No. 06-1831, 2008 WL 2346151, at *15 (E.D. La. June 6, 2008), aff'd, No. 08-30654, 2010 WL 1141590 (5th Cir. Mar. 25, 2010).

Petitioner also claims that his counsel was ineffective for failing to request a special jury

instruction regarding Simmons' testimony. At the post-conviction evidentiary hearing, defense counsel explained that, in light of the general instructions which were given, he was of the opinion that a special instruction was unnecessary:

> Q. Now, did you request a special jury instruction regarding the inconsistent statements of Ms. Simmons?
>
> A. No, from looking at the record, it – the instruction that dealt with that you could disregard statements that are obviously incorrect or lies, was already in the Judge's general instructions. So, I don't think there was any need to have any kind of special jury instruction, because Judge Ellender had already included that in the general instructions.[25]

---

[25] Supplemental State Rec., Vol. I of I, transcript of February 13, 2008, p. 14. The trial judge gave the following general jury instructions given concerning witness testimony:

> As jurors, you alone shall determine the weight and credibility of the evidence. You should scrutinize carefully the testimony given, and the circumstances under which the witnesses testified. In evaluating the testimony of a witness, you may consider his ability and opportunity to observe and remember the matter about which he testified, his manner while testifying, any reason he may have for testifying in favor of or against the state or the defendant, and the extent to which his testimony is supported or contradicted by other evidence.
>
> The testimony of a witness may be discredited by showing that the witness will benefit in some way by the defendant's conviction or acquittal, or that the witness is prejudiced, or that the witness has any other reason or motive for not telling the truth.
>
> The testimony of a witness may be discredited by showing that previously the witness has been convicted of a crime. The conviction does not necessarily mean that the witness is not telling the truth. It is a circumstance you may consider along with all other evidence in deciding whether you believe any or all of the testimony of the witness.
>
> The testimony of a witness may be discredited by a showing that the witness made a prior statement which is inconsistent with his present testimony. Prior contradictory statements are admitted only to attempt to discredit the witness – not to show that the contradictory statements are true.
>
> If you should find that a witness has testified falsely as to a material fact, then you have the right to reject the entire testimony of the witness or to reject only part of the testimony, based upon how you are impressed with the truthfulness of the

Counsel's decision on whether to request a special jury charge is inherently one of trial strategy.  See, e.g., Taylor v. Cain, Civ. Action No. 07-3929, 2008 WL 4186883, at *9 (E.D. La. Sept. 10, 2008).  Again, courts are not to second-guess such tactical decisions based on hindsight; instead, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.  Further, "a conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it *permeates the entire trial with obvious unfairness."*  St. Aubin v. Quarterman, 470 F.3d 1096, 1102 (5th Cir. 2006) (internal quotation marks and brackets omitted) (emphasis added).  Considering the thoroughness of the general charges given, there is simply no basis for finding that counsel's failure to request the special charge at issue affected the ultimate fairness of petitioner's trial or its outcome.  Accordingly, this claim should likewise be rejected.

Petitioner next claims that his counsel was ineffective for failing to file a motion for discovery.  However, at the post-conviction evidentiary hearing, defense counsel explained that such a motion was unnecessary because the state had already provided "open file" discovery:

> [T]hey had given open file discovery in connection with the case, and so we were in possession of the entire District Attorney's file ....  And so, we were fully aware of everything that was in the file, at the time of the trial.  So there was no need to file anything in particular.  You know, in addition to what we already received.[26]

---

witness.

State Rec., Vol. II of II, transcript of July 18-19, 2001, p. 244-45.

[26]  Supplemental State Rec., Vol. I of I, transcript of February 13, 2008, pp. 14-15.

Where, as here, a prosecutor represents that he is providing "open file" discovery, defense counsel is entitled to rely on that representation and is not ineffective for failing to file a motion for discovery. See Strickler v. Green, 527 U.S. 263, 283 n.23 (1999) ("[I]f a prosecutor asserts that he complies with Brady through an open file policy, defense counsel may reasonably rely on that file to contain all materials the State is constitutionally obligated to disclose under Brady."); Smith v. Maggio, 696 F.2d 365, 367 (5th Cir. 1983) ("Counsel had no duty to file pretrial motions, because the prosecutor established an open file policy that made the filing of discovery motions or Brady requests pointless."); Garza v. Director, Civ. Action No. 9:08cv115, 2009 WL 33428, at *7 (E.D. Tex. Jan. 6, 2009); Rose v. Johnson, 141 F.Supp.2d 661, 684 (S.D. Tex. 2001); United States v. Patterson, 882 F.Supp. 104, 106 (S.D. Tex. 1995). Accordingly, this claim has no merit.

Lastly, petitioner claims that his counsel was ineffective for failing to call Henry Smith as a witness. However, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)). Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).

In an attempt to meet his burden, petitioner has submitted a memorandum dated November 2, 2009, from his step-father, Joseph Thompson, Jr., to District Attorney Joseph L. Waitz, Jr., in which Thompson reports that he received a letter from Henry Smith, III, recanting his statement

against petitioner.  In that letter, Smith wrote:

> I Henry Smith, III gave a false statement against Gerald Stoves and Ranielle Lagarde
> to the police.  These 2 men didn't have anything to do with the Armed Robbery.  The
> real culprits are Tijuana Simmons, Quincey Meadows and Roland Johnson were the
> people involved with the robbery.  During my arrest I wasn't in a stable mind, I was
> still high.  So I agreed to whatever the detective told me to say.  Tijuana is the real
> mastermind of the robbery; because how would we know what time to come, how
> to open the safe and register, where to enter and exit from and where all the alarms
> were.  Please take this statement into consideration.[27]

At the post-conviction evidentiary hearing, defense counsel testified that he was unaware that

Smith was purportedly willing to testify on petitioner's behalf:

> Q.    But, why didn't you call Mr. Henry Smith, the co-defendant?
>
> A.    Like I told you, I don't recall that individual, and I don't recall the fact that
>       any of the co-defendants were willing to give us any testimony that would
>       have helped our case, because if any of the co-defendants had been willing
>       to testify that he – that my client wasn't involved in it, I surely would have
>       called him, if I had known that.
>
> Q.    Didn't Henry Smith write a letter regarding the exculpatory evidence that –
>       in regards to my client, that letter Mr. Thompson testified to?
>
> A.    I don't recall that.  But, like I said, it had – had I known that any co-
>       defendants who were also charged with my client were going to testify that
>       my client was not involved, I would have surely called them.[28]

Obviously, it strains credulity to suggest that defense counsel would have intentionally

chosen not to call as a witness a co-defendant who was willing to admit his own culpability in the

crime while at the same time exculpating counsel's client.  Moreover, it must be noted that petitioner

---

[27] Rec. Doc. 16-2, pp. 44 and 46.  The Court notes that Smith's letter and Thompson's
memorandum were not notarized or authenticated.  Nevertheless, even if the Court assumes that the
documents are authentic, petitioner is not entitled to relief for the reasons noted in this opinion.

[28] Supplemental State Rec., Vol. I of I, transcript of February 13, 2008, p. 16.

has presented no evidence whatsoever to rebut defense counsel's sworn testimony that he was unaware that Smith was purportedly willing to testify on petitioner's behalf.[29]  The absence of such evidence is fatal to petitioner's claim, because counsel is not ineffective for failing to call a witness if counsel had no reason to know that the witness would provide beneficial testimony.  See Owens v. Dormire, 198 F.3d 679, 682 (8th Cir. 1999); McKay v. Sherry, Civ. Action No. 2:08-11046, 2009 WL 5171799, at *12 (E.D. Mich. Dec. 23, 2009); United States v. Scott, No. 2:02 CV 125, 2005 WL 1676785, at *13 (N.D. Ind. July 15, 2005); Perez v. Rosario, 294 F.Supp.2d 1125, 1136 (N.D. Cal. Nov. 24, 2003).  Petitioner has not met his burden to prove that counsel was aware of Smith's alleged willingness to testify, and, therefore, this claim also fails.

Accordingly, for all of the foregoing reasons, petitioner has failed to demonstrate that the state court's decision denying his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Therefore, applying the AEDPA's deferential standard, this Court therefore likewise rejects those claims.

## B.  Sufficiency of the Evidence

Petitioner's next claim is that there was insufficient evidence to support his conviction.  That claim was first asserted in a supplemental post-conviction application filed in the state district court

---

[29]  The Court notes that petitioner argues that he would have such evidence if his state post-conviction counsel had subpoenaed Thompson to testify at the post-conviction hearing.  That failure of counsel, however, does not excuse the absence of such evidence, because petitioner had no constitutional right to effective assistance of counsel in the state post-conviction proceedings.  See, e.g., Bishop v. Epps, 265 Fed. App'x 285, 290 (5th Cir.), cert. denied, 128 S.Ct. 2975 (2008); In re Goff, 250 F.3d 273, 276 (5th Cir. 2001).

in 2007.[30] The state district court judge denied relief, finding that the application was "untimely and repetitive."[31] The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application, citing La.C.Cr.P. article 930.8, which sets forth the limitations period for seeking state post-conviction relief, and article 922, which provides the guidelines for determining the finality of judgments on appeal.[32] The Louisiana Supreme Court thereafter denied relief without assigning additional reasons.[33]

The state argues that this claim is procedurally barred in this federal proceeding.[34] The state is correct.

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

---

[30] Rec. Doc. 16-2, pp. 27-35.

[31] Supplemental State Rec., Vol. I of I, transcript of June 25, 2008, p. 4.

[32] Rec. Doc. 16-2, p. 37 (State v. Stoves, No. 2008 KW 1605 (La. App. 1st Cir. Oct. 24, 2008) (unpublished)).

[33] State ex rel. Stoves v. State, 6 So.3d 784 (La. 2009) (No. 2008-KH-1589); Supplemental State Rec., Vol. I of I.

[34] Rec. Doc. 23, pp. 7-8.

Both the state district court and the Louisiana First Circuit Court of Appeal rejected petitioner's claim as untimely. Although the Louisiana Supreme Court did not assign reasons when denying petitioner's related writ application, that denial is presumed to be on the same ground. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground."). It is beyond cavil that limitations period set forth La.C.Civ.P. art. 930.8 qualifies as an independent and adequate state procedural ground to support a procedural bar in federal court. Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); see also Morris v. Cain, No. 06-30916, 2008 WL 3876479 (5th Cir. Aug. 20, 2008); Pineyro v. Cain, 73 Fed. App'x 10, 11 (5th Cir. 2003); Tolbert v. Cain, Civ. Action No. 08-435, 2009 WL 1309851, at *2 (M.D. La. May 11, 2009); Lott v. Travis, Civ. Action No. 08-1390, 2008 WL 4964797, at *7-8 (E.D. La. Nov. 18, 2008).

When, as here, the state court denied relief based on an independent and adequate state procedural rule, "federal *habeas* review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183

(5th Cir. 1992). Here, petitioner has made no attempt to establish cause for the failure to raise his sufficiency claim in a timely manner. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court need consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." However, in order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted). Applying that standard, the Court finds that petitioner has not made a persuasive showing that he is actually innocent of the charge against him and, therefore, he has not demonstrated that any miscarriage of justice will result from the application of the procedural bar. Accordingly, petitioner's claim challenging the sufficiency of the evidence is procedurally barred in this federal court.[35]

---

[35] Nevertheless, even if the claim were not procedurally barred, it is clear the claim has no merit. There is no question that the state established that an armed robbery was committed, and Tijuana

## V. Claims from Petitioner's Original *Habeas Corpus* Petition

As noted previously in this opinion, the United States District Judge has ruled that the two claims asserted in petitioner's original federal *habeas* petition were unexhausted. Based on that ruling, petitioner withdrew those two claims.

The undersigned notes, however, that the state has repeatedly conceded that the two claims in the original petition were exhausted on *direct review*,[36] and the state court record appears to support that concession. Accordingly, it is appropriate to review those two claims on the merits. If the District Judge finds that the claims are exhausted and should be reviewed, the undersigned notes that federal *habeas corpus* relief should nevertheless be denied because the claims have no merit for the following reasons.

---

Simmons positively identified petitioner as one of the robbers. Under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction. See United States v. King, 703 F.2d 119, 125 (5th Cir. 1983); White v. Cain, Civ. Action No. 05-3667, 2007 WL 3270770, at *10 (E.D. La. Nov. 2, 2007); State v. Neal, 796 So.2d 649, 658 (La. 2001). Although petitioner disputes Simmons' credibility, questions concerning credibility are generally beyond the scope of *habeas* review. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson[ v. Virginia, 443 U.S. 307 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 (E.D. La. Mar. 8, 2010).

[36] Rec. Doc. 4, pp. 3 and 6; Rec. Doc. 8, pp. 3-4. Exhaustion does not require that a petitioner pursue his claims on *both* direct review and collateral review; the exhaustion is met if he fairly presents his claim in *either* of those proceedings. See Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982) ("Exhaustion normally requires only that the federal claim have been fairly presented to the highest court of the State, *either* on direct review of the conviction *or* in a post-conviction attack.") (emphasis added; internal quotation marks omitted).

<u>A.  Denial of Challenge for Cause</u>

Petitioner claims that the trial court erred in denying his challenge for cause of a juror whose son was an assistant district attorney.  For the following reasons, the Court finds that relief is not warranted based on this claim.

Clearly, "[t]he Sixth Amendment right to a fair trial includes the right to an impartial jury." <u>Miniel v. Cockrell</u>, 339 F.3d 331, 338 (5th Cir. 2003).  However, "[t]he standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  <u>Soria v. Johnson</u>, 207 F.3d 232, 242 (5th Cir. 2000) (internal quotation marks omitted).  Moreover, "[a] state trial court's refusal of a petitioner's challenge for cause is a factual finding entitled to a presumption of correctness."  <u>Miniel</u>, 339 F.3d at 338-39; <u>Soria</u>, 207 F.3d at 242; <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *10 (E.D. La. Oct. 29, 2009).  Therefore, petitioner is entitled to *habeas* relief only if he rebuts the state court's factual finding by clear and convincing evidence.  <u>See</u> <u>Miniel</u>, 339 F.3d at 340; <u>Soria</u>, 207 F.3d at 242; <u>Anthony</u>, 2009 WL 3564827, at *10.

On direct appeal, the Louisiana First Circuit Court of Appeal rejected petitioner's claim, holding:

> In assignment of error number 1, the defendant contends the trial court erred in denying his challenge for cause against a prospective juror whose son was an assistant district attorney.  The prospective juror referenced in Richard J. Elfert.
> Initially, we note that the defendant exhausted his peremptory challenges.  Thus, if he establishes an erroneous denial of a defense challenge for cause, prejudice is presumed, and there is reversible trial court error.  <u>See</u> <u>State v. Ross</u>, 623 So.2d 643, 644 (La. 1993).
> The state or the defendant may challenge a juror for cause on the ground the

juror is not impartial, whatever the cause of his partiality. La. C.Cr.P. art. 797(2). [FN1]

> [FN1] In brief to this Court, the defendant references La. C.Cr.P. art. 797(3) as the law governing this assignment of error. However, because it was Elfert's son, rather than Elfert, who had an employment relationship with the district attorney, La. C.Cr.P art. 797(3) is inapplicable, and La. C.Cr.P. art. 797(2) provides the governing law. See State v. Ivy, 307 So.2d 587, 591 (La. 1975).

A trial court is vested with great discretion in ruling on challenges for cause, and that ruling will not be disturbed unless a review of the *voir dire* as a whole indicates an abuse of that discretion. State v. Berry, 95-1610, p. 4 (La. App. 1 Cir. 11/8/96), 684 So.2d 439, 447, writ denied, 97-0278 (La. 10/10/97), 703 So.2d 603. A refusal by a trial court to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Copeland, 530 So.2d 526, 534 (La. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989).

During the trial court's questioning of the third group of prospective jurors, prospective juror Richard Elfert indicated his son worked for the district attorney's office. In response to further questioning, Elfert indicated the fact his son worked for the district attorney's office would not "bother" Elfert in any way, shape, or form. Subsequently, Elfert caught the court's attention when the court asked the third group of prospective jurors, "[h]ow many of you really don't want to be on this jury?" Elfert explained, he "just wouldn't like being in the position."

The district attorney's office for whom Elfert's son worked did not prosecute the defendant because the district attorney had already recused his office due to the fact that the defendant's stepfather (Joe Thompson) was also an employee.

In response to questioning by the assistant attorney general prosecuting the case, Elfert indicated the following. Elfert's son was an assistant district attorney, but never discussed the cases he was handling. Elfert's son had never said anything about Joe Thompson. In the event the prosecution failed to carry its burden of proof, Elfert stated he would not feel anxiety, due to his son's employment, in voting not guilty. Elfert also indicated he was not "leaning towards the prosecution" in the case because of his son's employment, and the prosecutor would have to prove the defendant guilty before he voted guilty.

The defense asked Elfert whether he would have any problems in explaining himself to his son if he were on the jury, voted not guilty, and the defendant were set free. Elfert replied, "[t]hat's something that I do not discuss with him."

The defense challenged Elfert for cause on the basis that he would be influenced by his son. The court denied the challenge, and the defense objected to

the court's ruling and exercised its final peremptory challenge against Elfert.

Considering Elfert's responses to the *voir dire* examination as a whole, there was no abuse of discretion of the trial court in regard to the ruling on the defendant's challenge for cause against Elfert.

This assignment or error is without merit.[37]

As noted, petitioner is entitled to federal *habeas* relief only if he rebuts the state court's factual findings regarding this claim by clear and convincing evidence. See Miniel, 339 F.3d at 340; Soria, 207 F.3d at 242; Anthony, 2009 WL 3564827, at *10. In the instant case, petitioner has presented no evidence showing that Elfert was in fact unwilling and unable to decide the case impartially according to the law and the evidence, and, therefore, petitioner has clearly failed to meet his burden.

Further, in any event, the claim also fails for an additional reason. Where, as here, the challenged juror was removed by use of a peremptory challenge after the denial of a challenge for cause, a petitioner is entitled to federal *habeas corpus* relief only if he demonstrates that the jury ultimately selected to try the case was not impartial. Ross v. Oklahoma, 487 U.S. 81, 85-86 (1988). Because defense counsel used a peremptory challenge to strike Elfert and because petitioner fails even to allege in this proceeding that the jury ultimately selected was not impartial, his claim necessarily fails. Dorsey v. Quarterman, 494 F.3d 527, 533 (5th Cir. 2007); Lagrone v. Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir. Sept. 2, 2003); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *27 (E.D. La. Mar. 8, 2010); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *12 (E.D. La. July 16, 2009).

---

[37] State v. Stoves, No. 2002-KA-1285, at pp. 2-4; State Rec., Vol. II of II.

<u>B.  Evidentiary Claim</u>

Petitioner also claims that the trial court erred in admitting an inculpatory statement absent

advance notice.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected petitioner's

claim, holding:

> In assignment of error number 2, the defendant contends the trial court
> committed error in denying the motion for mistrial on the basis of admission of an
> inculpatory statement without notice under the *res gestae* exception.
> Louisiana Code of Criminal Procedure article 768 provides:
>
>> Unless the defendant has been granted pretrial discovery, if
>> the state intends to introduce a confession or inculpatory statement in
>> evidence, it shall so advise the defendant in writing prior to beginning
>> the state's opening statement.  If it fails to do so a confession or
>> inculpatory statement shall not be admissible in evidence.
>
> During the direct examination of Tijuana Sharuda Simmons at trial, the
> following colloquy occurred:

> Q.     Tijuana, prior to July 28, 1999, did you talk to anybody about
>        your job at Sunrise?

> A.     Yes, sir.

> Q.     Who did you talk to?

> A.     Ranielle Lagarde, Henry Smith, and G.D. Lagarde.

> Q.     Now you said G.D. Lagarde?

> A.     Correct.

> Q.     And who do you know as G.D. Largarde?

> A.     Gerald Stoves.

> Q.     Why do you call him G.D. Lagarde?

> A.     That's what I know him by.

....

Q.    What did you talk about when you talked to them about your job?

A.    Well they discussed about robbing the store that night, but I didn't think they was going to do that.

Q.    You say you didn't think they were going to do that. Did you tell them things about the store?

A.    Well, questions was (sic) asked and I answered them, yes, sir.

Q.    So you told them things about the store?

A.    Correct.

Q.    What kind of things did you tell them about the store?

A.    They asked how much money was kept in the store, which I didn't know, and when was I going to work again.

Q.    And when you had this conversation, tell the jury again, who was present?

A.    G.D. Lagarde, which is Gerald Stoves.

Q.    And who else?

A.    Henry Smith, and Ranielle Lagarde.

Q.    Who did most of the talking?

A.    Henry and Ranielle.

Q.    Did G.D. say anything at that time?

A.    Yes, sir.

Q.    What did he say?

A.    That he was going with them.

The defense moved for mistrial, arguing Simmons had testified the defendant said he would "go along with this robbery," and no notice had been given to the defense concerning the statement. The court denied the motion for mistrial, holding the statement was part of the *res gestae*, and the defense objected to the court's ruling.

Initially, we note the record does not support the defense contention that no Article 768 notice was provided in this matter. The record contains a "**768 Notice[,]**" filed on the first day of trial, setting forth, "[t]hat pursuant to Louisiana Code of Criminal Procedure Article 768, notice is hereby given to he defendant that the State of Louisiana intends to introduce in its case in chief inculpatory statements made by GERALD STOVES, the defendant herein."

Further, according to Simmons's testimony, defendant's alleged inculpatory statement was made **prior to** commission of the crime. However, as used in Article 768, the term "inculpatory statement" refers to an out-of-court admission of incriminating facts made by a defendant **after** the crime has been committed. State v. Robinson, 563 So.2d 477, 483 (La. App. 1 Cir.), writ denied, 567 So.2d 1122 (La. 1990).

This assignment is without merit.[38]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts merely misapplied state evidence law, his claim is not reviewable in this federal proceeding.

Moreover, to the extent that petitioner is arguing that the introduction of the statement violated federal law, he has failed to demonstrate that he is entitled to *habeas* relief on that basis. Even if the statement were improperly admitted, which is an issue this Court need not and does not reach, that alone would not necessarily warrant *habeas* relief. The United States Fifth Circuit Court of Appeals has noted:

---

[38]  State v. Stoves, No. 2002-KA-1285, at pp. 5-7; State Rec., Vol. II of II.

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted."). In the instant case, the statement at issue, which occurred long before the crime even took place, simply cannot be said to have played a crucial, critical, and highly significant role in petitioner's conviction. Rather, his conviction was based on the evidence, such as Simmons' testimony, that petitioner was actually present and participating in the crime when it finally did occur. Therefore, petitioner has failed to meet his burden to demonstrate that the admission of the testimony concerning his prior statement resulted in a denial of fundamental fairness.

Accordingly, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claim regarding the admission of the statement into evidence.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[39]

New Orleans, Louisiana, this nineteenth day of April, 2010.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[39] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.